CASE 77.—ACTION BY NAOMI ELY AGAINST THE HARTFORD
LIFE INSURANCE COMPANY ON A POLICY ON THE
LIFE OF HER HUSBAND.—May 1.

# Ely v. Hartford Life Ins. Co.

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

From a judgment dismissing the action, plaintiff
appeals—Affirmed.

1. Insurance—Assignment of Policy—Duress in Procuring Assign-
   ment—Evidence.—In an action by a wife on an insurance
   policy on the life of her husband in which she was the
   beneficiary, the defense being payment to an assignee of the
   policy, evidence examined and held not to fairly sustain
   plaintiff's contention that her signature to the assignment
   was the result of duress.
2. Same—Consent of Beneficiary to Assignment by Insured.—
   Where a wife joined her husband in the assignment of an
   insurance policy upon his life in which she was the beneficiary,
   even if her signature to the assignment was the result of
   duress consisting in the conduct and threats of her husband,
   such duress would not affect the validity of the assignment
   in the absence of proof sufficient to connect the assignee with
   it or show knowledge of it.
3. Contracts—Validity of Assent — Duress.—Duress to avoid a
   contract must be the act of the other party himself or his
   agent, or must be imposed with his knowledge and taken ad-
   vantage of by him to obtain the agreement, so that duress by
   a third person will not avoid a contract made with a party
   who was not cognizant of it.
4. Judgment—Foreign Judgments — Conclusiveness of Adjudica-
   tion.—Plaintiff joined her husband in assigning to an Ohio
   corporation an insurance policy upon his life and in which
   she was the beneficiary. After his death, the assignee, having
   possession of the policy, sued on it in Ohio. Rev St. Ohio

1908, section 5045, relating to service on non-residents by publication in actions relating to real or personal property within the State, provides "that, when service may be made by publication, personal service of a copy of the summons and petition may be made out of the State upon such defendant." The insurance company brought plaintiff into the Ohio action by cross-petition, and, though properly served twice at her home in this State with summons and copies of the pleadings, she failed to appear in such action. In due time the Ohio court entered judgment against the insurance company and for the assignee. After she had been served with process from the Ohio court, plaintiff in this State sued on the policy. Held, that the situs of the property being in Ohio and within the jurisdiction of the Ohio court, the judgment of such court was a final determination between plaintiff, the assignee, and the insurance company as to the disposition of the proceeds of the policy.

5. Same—Judgments in Rem.—While it is unquestionably the law that a judgment in personam against a nonresident defendant not served with process in the jurisdiction of the court is void, it is equally true that a judgment in rem against a nonresident defendant, though only before the court on constructive service, is not only good against him, but as against all other persons claiming interest in or title to the property proceeded against having notice of the proceedings.

6. Same—Operation and Effect.—A debt due a nonresident from a person in this State may be attached and recovered by the creditor of such nonresident by bringing the latter before the court by constructive service only, and a judgment rendered in such cases is a complete bar to an action subsequently brought by the nonresident against the debtor in whose hands the money was garnished; the doctrine being that the proceedings so far as the thing attached is concerned is an action in rem.

7. Same—Foreign Judgment in Rem—Operation in Other State.— To entitle a judgment in a proceeding in rem, authorized by a statute of the State in which such proceeding is instituted, but in which the defendant was not personally served with process, and did not appear, to full faith and credit in another state, the res must have been attached or seized, or at least have been within the jurisdiction of the court rendering the judgment.

HOBBS & FARMER for appellant.

POINTS AND AUTHORITIES.

First: The assignment of her interest in the policy of insurance upon the life of Joseph Ely by the appellant is void or voidable having been procured through duress, coercion and fraud.

Second: Joseph Ely was the agent of the Specialty Carriage Company when he committed the acts constituting duress.

A threat communicated to a husband by a party who knows or in the exercise of ordinary care and prudence ought to know they will be communicated by the husband to the wife to induce her to sign an instrument makes the husband his agent and he becomes the principal in duress thus produced.

Third: The paper purporting to be an assignment of the interest of Mrs. Ely in the policy upon the life of her husband is insufficient in form and substance to constitute a valid and binding contract, is without consideration and void.

Fourth: There was collusion between the defendant, The Hartford Insurance Company and the Specialty Carriage Company in procuring the judgment in the Ohio Court and in the defense in the Fayette Circuit Court.

Fifth: The judgment of the Ohio Court is void for want of jurisdiction of the person of the defendant or of the subject matter of the action and can therefore be collaterally attacked.

Sixth: The judgment of the Ohio Court was set up and relied upon by the appellee and the attack made by the appellant thereon is direct and not collateral.

Seventh: The proof in the case is insufficient to establish the claim of the Specialty Carriage Company.

Eighth: The endorsement of the paper by Ely to the Specialty Carriage Company without consideration and not binding.

1. Authorities on duress. Wharton on Contracts, vol. 1, p. 147; Clark on Contracts, sec. 172, p. 356; Clark on Contracts, sec. 170, p. 355; Lawson on Contracts, sec. 257; Smith v. Kay, 7 H. L. Cases, 750; Dent v. Bennett, 4 Myl. & Cr., 269; Woodbury v. Woodbury, 141 Mass., 329; Zeigler v. Hughes, 55 Ill., 228; Ward v. Armstrong, 84 Ill., 151; Sands v. Sands, 112 Ill., 225; Jones v. Loyd, 117 Ill., 597; Cowee v. Cornell, 75 N. Y., 99; Fusher v. Bishop, 108 N. Y., 25; Greenfield's Estate, 14 Pa. St., 489; Lawson on Contracts, 250; Lawson on Contracts, 260; Rice on Evidence, vol. 2, p. 951; Zorobo v. Miller, 16 Pa., 488; Hopkins v. Sievert, 58 Mo., 201; Smally v. Hale, 37 Mo., 103; Story's Equity, vol. 1, sec. 239; Mary E. Tapley v. Geo. Tapley, &c. 10, Minn., 360; Foshay v. Furguson, 5th Hill, 154; City Nat. Bank of Dayton v. Kusworm, 26 L. R. A., 56; Beverly H. Barton & Wife v. A. M.

Ely v. Hartford Life Ins. Co.

McMillan, 8 L. R. A., (N. S.), 991; George Joannim v. David Ogelvie,.16 L. R. A., 376; McCutcheons Appeals, 96 Pa., 133.)

2. Kentucky Cases.   (Lightfoot v. Wallis 12 Bush, 498; Evans v. Thomas, 4 Ky. Law Rep., 629; Buford v. L. & N. R. R. 6 Ky. Law Rep., 263; Talbott's Devisees v. Hoover, 12 Bush, 408.)

3. Authorities of agency.   (Am. & Eng. Enc. of Law, vol. 1, p. 410, 1st Ed.; Kingsley v. Fritz, 51 Vt., 414.)

3. Authorities on jurisdiction of the Ohio Court.   (Gebbard v. Garnier, 12 Bush, 326; Board of Public Works v. Columbia College, 17 Wall., 521; Piatt v. Oliver, 2 McLean, 268; Reynolds v. U. S., 12 Pet., 526, see pp. 564-566; Mellon v. Moline Iron Works, 131 U. S., 365;. Clark v. Oglevie, 23 Ky. Law Rep., 552; Wood v. Wood, 78 Ky., 625; Simmons v. Saul, 138 U. S., 439; Insurance Company v. Bangs, 103 U. S., 435, Ibid 439; Dearing v. Bank of Charleston, 48 A. D., 300; Baldwin v. Hale, 1 Wall., 308; Rogers ·v. Naff, 95 U. S., 714; Brooklyn Insurance Co., 99 U. S., 362; Empire v. Darlington, 101 U. S., 87; Grisby v. Barr, 14 Bush, 330; Cooper v. Smith, 25 Iowa, 269, 95 U. S., 246; Story on Conflicts of Law, 54; 4 Waits, Actions and Defenses, 190; Ward v. Boyce, 152 New York, 191; Mary E. Ward v. George B. Boyce, 36 L. R. A., 549.)

5. As to the proof of the Carriage Company claim.   (Poor, &c. v. Robinson, &c., 13 Bush, 290; Rice on Evidence, vol. 1, p. ·146; Clifton v. U. S., 45 U. S. Howe, 242, 11 Ky. Law Rep., 957; Rice on Evidence, vol. 1, p. 149.)

E. L. HUTCHINSON for appellee.

J. R. MORTON & EDWARD P. BRADSTREET of counsel.

AUTHORITIES.

Cyclopedia of Law and Procedure, vol. 9, pp. 443, 448, .449·  Wallack v. Hoexter, 17 Abb. N. Y. 267; Wright v. Remmington, 32 Am. Rep., 180; Cyclopedia of Law and Procedure, vol. 9, p. 445; Fightmaster v. Levi, Ky. Law Rep., 412; Long, &c. v. Branham, Advance Sheets of vol. 30 of K yLaw Reporter, 552: Wirgman v. Miller, 98 Ky., 620; New York Life Insurance Co., v. Miller, 22 Ky. Law Rep. 230; Illinois C. R. Company v. Smith, 19 L. R. A., 577; Bragg v. Gaynor, 21 L. R. A, 161; Neufelder v. German-American Insurance Co., 22 L. R. A., 287; Embree v. Hanna, 5 Johnson s Reports 101; Williams v. Preston, 3rd J. J. Marshall; Whiting v. Johnson, 5 Dana, 391; Ward v. Boyce, L. R. A., 36, p. 549.)

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was instituted by appellant in the court
below to recover of the appellee Hartford Life In-
surance Company $2,000 alleged to be due her
as the named beneficiary in a policy of insurance for
that amount, issued upon the life of her husband,
Joseph Ely, some years previous to his death, which
occurred in Fayette county in September, 1898.  The
Union Savings Bank & Trust Company, assignee of
the Specialty Carriage Company, and the Specialty
Carriage Company, both incorporated under the laws
of Ohio and having their chief offices and places of
business respectively in the city of Cincinnati, that
State, were also made parties defendant to the action,
but the action was later and on appellant's motion
dismissed as to these defendants and thereafter prose-
cuted against the appellee, Hartford Life Insurance
Company, alone.  The answer of the latter admitted
the issual to Joseph Ely, deceased, of the policy for
the benefit of appellant, but averred that the former
several years before his death became indebted to the
Specialty Carriage Company in a considerable sum,
for which he executed to that company a writing ac-
knowledging and promising to pay it and to secure its
payment, together with his wife, the appellant, Naomi
Ely, by a proper writing pledged and assigned to it,
the policy in question, and that the policy and written
assignment were thereupon delivered to the Specialty
Carriage Company, and that thereafter appellee upon
the presentment to it of the written assignment con-
sented thereto by proper statement upon the policy
and by making the customary entry upon its records.
The answer further averred that at the death of

Joseph Ely the Specialty Carriage Company still held the policy under the assignment as collateral security for his indebtedness to it, which then amounted to $2,053.57; that soon after the death of Joseph Ely the Specialty Carriage Company made an assignment of its property to the Union Savings Bank & Trust Company for the benefit of its creditors by which it came into possession of the policy in question, and as such assignee it made out and forwarded to appellee proof of the death of Joseph Ely, and shortly thereafter brought suit against it in the superior court of Hamilton county, Ohio, to recover the amount of insurance due under the policy; that appellee filed an answer in that action which admitted its indebtedness upon the policy and willingness to pay it to whomsoever the court might adjudge, but asked that it be not required to pay until appellant could be brought before the court and be permitted to show what interest, if any, she had in the policy. The answer was made a cross-petition against appellant, who was therein and by an order of interpleader entered by the court made a party defendant to the action and cross-action, and called upon to answer and assert whatever claim she might have to the proceeds of the policy in controversy. It further appears from the averments of the answer filed in the action in the Fayette circuit court that copies of the petition, answer, and cross-petition and order of interpleader entered by the superior court of Hamilton county, Ohio, making appellant a party to that action, were, together with a summons issued from that court, duly served upon her in Fayette county, Ky., by a person appointed by the Ohio court to perform that duty, and that after the expiration of the time allowed her by the order of interpleader to appear in the Ohio court to assert

claim to the proceeds of the policy, but before that court rendered judgment directing that the proceeds of the policy be paid the assignee of the Specialty Carriage Company in satisfaction of the indebtedness of Joseph Ely's estate to it, as a matter of precaution other copies of the same pleadings, order of interpleader, and an additional summons were served upon appellant by another appointee of that court. In addition to the foregoing facts the answer pleaded in apt terms the jurisdiction of the Ohio court of the parties to and subject-matter of the action in that court; also the conformity to the provisions of the Ohio Code of the steps taken to make appellant a party to the action and afford her an opportunity to assert in that court whatever claim she might have to the proceeds of the policy, and finally that the judgment of the Ohio court was and is conclusive of the rights of the parties and a bar to the action brought by appellant in the Fayette circuit court. The averments of the answer were traversed by reply, but later an amended reply was filed in which the jurisdiction of the Ohio court and the validity of its judgment was denied, and it was alleged that appellant was induced to place her signature to the writing assigning the policy on her husband's life to the Specialty Carriage Company by the importunities and threats of her husband and the misconduct of the carriage company, and the act, being the result of duress, did not divest her of her interest in the policy or right to its proceeds. The affirmative matter of the original and amended reply was controverted by rejoinder. Upon the issues thus formed and the proof taken by the parties the court rendered judgment dismissing the action at appellant's cost, and she, being dissatisfied with the judgment, has appealed.

We think the judgment was proper. Appellant's contention that her signature to the writing by which the policy was assigned to the Specialty Carriage Company was the result of duress is not fairly sustained by the evidence. Her version of that transaction is that the policy had been delivered to her by her husband after it was issued, and was kept by her in a drawer, from which he took it and sent it to the carriage company, which retained it several months and then sent it to her husband, with the request that he and his wife execute the assignment and return the policy; that she was induced to execute the assignment by the threats of the carriage company, to whom her husband was indebted, that he would be prosecuted for embezzlement if she did not join him in the assignment, and by the husband's threats that he would kill himself if she did not sign the paper. She did not claim that any officer or agent of the Specialty Carriage Company was present when the instrument was signed by her, or that any representative of the company had ever communicated with her on the subject, but that she had seen, and for a time had in her possession, several letters from the company to her husband containing intimations of prosecution unless an assignment was made of the policy. None of these letters were offered in evidence. It is true appellant testified they were burned with her house, and her daughter testified to having seem some of them, and a son one of them. Appellant, her son and daughter say she refused to write her name to the assignment when the son by request of the husband carried it to her for that purpose. Appellant and her daughter also said that the husband then came and asked her to sign it and she refused to do so until he threatened to leave home and kill himself, and that she then

yielded, but wept when she signed the paper. In view of the testimony of appellant, her son and daughters, it is strange that she said in a letter inclosing the policy to the carriage company, written November 27, 1895, by her for her husband, this being the first time the policy was sent: ''I have had the policy in the desk at the shop for some time to send to you, but would forget to mail it.'' And stranger still that, on April 23, 1896, when the policy was returned with the assignment to the carriage company, she again wrote: ''I send under separate cover the insurance policy [which, according to the evidence, was sent with the assignment.] It was just handed me a few days ago by Ambrose.'' The Ambrose here mentioned was the attorney of appellant and her husband. After this several letters, covering a period of two years, were written by appellant for her husband to the carriage company, in one of which the company was thanked for paying a premium on the policy, and in not one of which was there complaint that appellant had acted under duress in executing the assignment, or even an intimation made on her own account or for her husband that she had reluctantly signed it. Sterett, the manager of the carriage company, who admittedly conducted all its correspondence with the Ely's testified that he had no information that appellant had executed the assignment under duress, but supposed that she had done so voluntarily and freely, and that he had never written a letter to her or her husband containing a threat of arrest or prosecution for embezzlement or any other crime or offense. He was corroborated by the stenographer who wrote all his letters, including the correspondence with the Ely's.

Another circumstance appears to be unexplained in the record. That is the failure of appellant to rely

upon and plead in her original reply the duress com-
plained of. The amended reply gives no reason for
the omission. Upon the question of duress we are
not prepared to say that appellant is supported by the
weight of the evidence. If, however, it be conceded
that the conduct and threats of appellant's husband
were such as to constitute duress, in the absence of
proof sufficient to connect the carriage company with
or show its knowledge of it, such duress would not
affect the validity of the assignment of the policy to
it. Duress to avoid a contract must be the act of the
other party himself or his agent, or must be imposed
with his knowledge and taken advantage of by him for
the purpose of obtaining the agreement. Duress by a
third person will not avoid a contract made with a
party who was not cognizant of it. In Long, etc., v.
Branham, 99 S. W. 271, 30 Ky. Law Rep. 552, there
was an attempt to set aside a mortgage, one of the
grounds being that the wife had executed it under
duress, produced by the acts of her husband, aided by
the conduct of the grantee. In respect to this com-
plaint the court said: "While the evidence is con-
flicting, we are not disposed to disagree with the con-
clusion of the lower court that the weight of it is
against appellant's contention that Mrs. Long exe-
cuted the mortgage under duress, unless it was such as
proceeded from the husband alone. That in signing
or acknowledging the mortgage she acted with great
reluctance we are satisfied, but the excitement and
distress under which she labored at the time were
apparently produced by the influence upon her by him.
It was the conduct of the husband, or what he said to
her in the conversation between them, after the mort-
gage had been written and before she acknowledged
it, that gave her distress and caused her to weep."

Fightmaster v. Levi, 17 S. W. 195, 13 Ky. Law Rep. 412; Hall v. Hall, 118 Ky. 656, 82 S. W. 269, 26 Ky. Law Rep. 553.

Although it is insisted by counsel for appellant that the claim of the Specialty Carriage Company against the estate of Joseph Ely has not been sufficiently made out, we are unable to see that any item of it is controverted by appellant. We think the claim sufficiently established by the proof. At the time of the assignment of the insurance policy by appellant and her husband to the carriage company the latter's indebtedness to it was $3,945.89. Between that date and his death this amount was reduced by successive payments to $2,053.57, and this is the amount for which it obtained judgment in the Ohio court. It is apparent, therefore, that the amount of the insurance policy was not quite sufficient to pay the debt.

The course taken by appellee to bring appellant before the Ohio court seems to have conformed literally to the requirements of the statutes of that state. Section 5045, Rev. St. 1898, provides: "Service may be had by publication in actions which relate to, or the subject of which is real or personal property in this State when a defendant has, or claims a lien thereof, or an actual or contingent interest therein, or the relief attempted consists wholly or partly in excluding him of any interest therein and such defendant is a nonresident of the State." Another part of the same statute (section 5049) contains the further provision: "That when service may be made by publication, personal service of a copy of the summons and petition may be made out of the State upon such defendant." Although properly served with summons, copy of the petition, cross-petition, and copy of the order of interpleader twice at her home in this State, appellant

allowed the appointed time for answering to expire
without making a defense to that action, and having
thus made default, the Ohio court proceeded to enter
judgment in the case against the appellee in favor of
the Specialty Carriage Company, decreeing that the
proceeds of the policy of insurance owing by appellee
be paid into court and applied to discharge the car-
riage company's debt. Appellant's action in the Fay-
ette circuit court was instituted after that in the Ohio
court, and after she had been served with process
from the Ohio court. At the time the action was
brought in the Ohio court the policy of insurance was
held by the carriage company, plaintiff in that action,
as security for its debt, and was filed with the petition
in that action; therefore the situs of the property, the
lien upon which was asked to be enforced, was in the
county of Hamilton, state of Ohio, and within the
jurisdiction of the court in which the action was
brought. Appellant was legally notified of the pend-
ency of that action, its nature and object, and had
ample opportunity to set up a claim to the policy in
that action, and this being true, we think the judg-
ment of that court was a final determination between
her, the Specialty Carriage Company, and appellee
as to the disposition of the proceeds of the policy.
While it is unquestionably the law that a judgment in
personam against a nonresident defendant not served
with process in the jurisdiction of the court is void, it
is equally true that a judgment in rem against a non-
resident defendant, though only before the court on
constructive service, is not only good against him, but
as against all other persons claiming interest in or
title to the property proceeded against having notice
of the proceedings.

It has been held by this court that a debt due a

nonresident from a person in this State may be attached and recovered by the creditor of such nonresident by bringing the latter before the court by constructive service only, and that a judgment rendered on such state of case is a complete bar to an action subsequently brought by the nonresident against the debtor in whose hands the money was garnished; the doctrine being that the proceedings so far as the thing attached is concerned is an action in rem. I. C. R. R. Co. v. Smith, 70 Miss. 344, 12 South. 461, 19 L. R. A. 577, 35 Am. St. Rep. 651; Bragg v. Gaynor, 85 Wis. 468, 55 N. W. 919, 21 L. R. A. 161; Neufelder v. German American Ins. Co., 6 Wash. 336, 33 Pac. 870, 22 L. R. A. 287, 36 Am. St. Rep. 166; Williams v. Preston, 3 J. J. Marsh. 600, 20 Am. Dec. 179; Whiting v. Johnson, 5 Dana, 391. The doctrine announced in these several cases that to entitle a judgment in a proceeding in rem, authorized by a statute of the state in which such proceeding is instituted, but in which the defendant was not personally served with process and did not appear, to full faith and credit in another state, the res must have been attached or seized, or at least have been within the jurisdiction of the court rendering the judgment.

For the reasons indicated, the judgment is affirmed.