THE AVON-BY-THE-SEA LAND AND IMPROVEMENT
COMPANY, appellant,

*v.*

ANN FINN, respondent.

[Filed September 30th, 1898.]

A covenant in a mortgage bound the mortgagee to release any part of the mortgaged premises "at any time during the existence or continuance" of the mortgage on tender of a part of the mortgage debt at a rate based on the quantity of land released. The mortgage being overdue a foreclosure suit was begun, and, after the complainant was entitled to decree, the defendant sold several lots of the mortgaged land, made tender and demanded a release, which was refused. Twenty days later the complainant took decree and the property was advertised for sale. Two days before the sale-day the defendant petitioned that the decree might be opened to permit answer and cross-bill, in order to compel a release.—*Held*, on appeal, that such petition was properly denied.

On appeal from an order advised by Vice-Chancellor Emery.

On March 23d, 1882, Thomas W. Finn gave his bond to Ann Swanton conditioned for the payment, on July 25th, 1887, of an indebtedness of $35,000, and secured the same by mortgage of certain lands in Monmouth county. The mortgage contained a covenant, by the mortgagee, to release to the mortgagor, his heirs and assigns, "at any time during the existence or continuance" of the mortgage, any part of the mortgaged premises on payment therefor, on the mortgage debt, at the rate of $1,000 per acre. On July 26th, 1882, Finn conveyed the mortgaged premises to Edward Batchelor. In 1883 Batchelor, then owning the same and adjoining lands, made and filed a map of the whole, showing streets, blocks and lots, and proceeded to develop the property and to sell lots, which Mrs. Swanton released on request. On June 25th, 1891, Mrs. Swanton assigned the bond and mortgage to Ann Finn. On February 19th, 1892, Batchelor conveyed what remained of the mapped property to

the Avon-by-the-Sea Land and Improvement Company. In 1894 and in 1895 that company conducted auction sales, and Mrs. Finn released from her mortgage the lots sold. On May 14th, 1897, Mrs. Finn began foreclosure in the court of chancery. The Avon company, sole defendant, was duly served with subpœna to answer, returnable June 3d, and failed to appear. On September 22d decree was taken to sell so much of the unreleased lands as would be sufficient to raise and satisfy $24,320.40 remaining due upon the mortgage, with interest and costs, and, under execution issued on such decree, the property was advertised for sale on November 22d. Two days before the sale-day the Avon company filed a petition to open the decree and permit answer and cross-bill, in order to compel a release of certain lots represented to have been struck off, at prices not stated, at auction sales conducted by the company in the previous July. It was alleged in the petition that such sales had been made free from encumbrances, with the knowledge of the complainant and without objection by her, but that on September 2d, when she was tendered on her debt the sum of $3,850, being sufficient to pay for these lots at the rate of $1,000 per acre, and to cover all interest and costs, she had refused a release.

This appeal is from the denial, after hearing on affidavits, of such petition and the discharge of a temporary stay of the sale.

*Mr. Charles L. Corbin,* for the appellant.

*Mr. Walter Bogert,* for the respondent.

The opinion of the court was delivered by

COLLINS, J.

We see no reason to question the propriety of the order from which this appeal was taken. The affidavits disclose no reasonable excuse for the appellant's inaction between the time of the last sale of lots in July and the tender on September 2d, and no excuse whatever for permitting the taking of the decree nearly three weeks later and delaying application to open such decree

until the eve of the advertised sale. Laches, although not always fatal to an application to open a chancery decree or to an appeal from a refusal to open such a decree (*Day* v. *Allaire, 4 Stew. Eq. 303, 315*), is, nevertheless, to be considered, and a decree suffered by default without valid excuse should not be opened, even although strictly there may be a defence, if to permit the decree to stand will work no injustice. *Vanderveer* v. *Holcombe, 7 C. E. Gr. 555; Boynton* v. *Sandford's Executors, 1 Stew. Eq. 184; affirmed, 1 Stew. Eq. 592.*

The mortgage in this case was long overdue, and the complainant was even entitled to a decree at the time of the experiment of the auction sales. Neither the fact that the mortgagee had given releases after the mortgage was overdue, nor the fact that she made no objection to the terms of the auction sales, gave the appellant any substantive rights or created an estoppel indestructible by laches. The most that the appellant could fairly have asked was a sale in lots by the map, and for that relief it was not necessary to open the decree. As sale could have been had almost immediately at the time of the application to open the decree, and the appellant could have protected its auction sales by bidding for the lots sold the prices at which it had sold them, it is evident that the purpose of exacting the release was that the appellant might gain the profit on such sales above the sum tendered, thus leaving the mortgagee to the hazard of securing the rest of her debt from the sale of the residue of the lands. We think that a court of equity could not reasonably be required to open a regular decree permitted by the defendant's laches, in order to help the accomplishment of that result. The equity the appellant had in the mortgaged premises, after condition broken, was an equity of redemption from the mortgage debt— not an equity to compel a release that might impair the mortgagee's security. If it was desired to protect the purchasers of lots sold at the auction, as far as practicable, that might have been easily accomplished by asking that the other lots should be first sold.

We do not say that timely answer and cross-bill would have availed the appellant. If the peculiar language of the covenant,

to release during the "existence or continuance" of the mortgage, may be interpreted to extend the covenant to a time after condition broken, it would hardly carry it beyond the filing of the bill to foreclose. So far as the mortgagee was concerned, that was a decisive step towards devoting the security to the debt. Delay of judicial procedure is mere favor.

The order appealed from will be affirmed.

*For affirmance*—COLLINS, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH—13.

*For reversal*—None.